# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA MACKLIN,<br><br>Plaintiff,<br><br>v.<br><br>DALE MENDENHALL, et al.,<br><br>Defendants. | Case No. 1:08-cv-00884-LJO-TAG<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (Doc. 13) |

Plaintiff Rebecca Macklin's Motion for Protective Order ("Motion") came on for hearing on March 30, 2009 at 9:00 a.m. before United States Magistrate Judge Theresa A. Goldner. Randall M. Rumph appeared personally on behalf of Plaintiff. Jesse J. Maddox appeared personally on behalf of Defendants Dale Mendenhall, Mark DeRosia, and the City of Delano. The Court has read and considered the pleadings and the arguments of counsel, and makes the following ruling.

Plaintiff moves this Court for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure prohibiting Defendants from conducting any discovery relating to Plaintiff's consensual sexual conduct or dating relationships. (Doc. 13 ("Motion"), pp. 7-8.)

## BACKGROUND

On June 22, 2008, Plaintiff Rebecca Macklin, a police officer with the Delano Police Department, filed this action seeking relief for alleged violations of 42 U.S.C. § 1983 and

California's Fair Employment and Housing Act prohibiting discrimination in employment. (Doc. 1). Plaintiff's complaint alleged that Defendant Mendenhall, a police officer with supervisory authority over her, engaged in substantial acts which created a sexually hostile work environment, including, without limitation, requesting an affair with Plaintiff, making sexually suggestive comments, continually requesting sex, discussing his fantasies about Plaintiff, and attempting to kiss Plaintiff. Plaintiff alleged that such conduct occurred over a lengthy period of time and Plaintiff complained to other supervisory personnel about the harassment, yet it continued. Plaintiff alleged that Defendant DeRosia became Chief of Police with the Delano Police Department and began "hitting on" Plaintiff, and Plaintiff rebuffed his advances. Plaintiff alleged that she was subjected to retaliatory conduct for refusing DeRosia's advances, including an unfounded criminal prosecution and disciplinary action involving suspension from the police force and the initiation and prosecution of termination proceedings.

Defendants Mendenhall, DeRosia, and the City of Delano dispute Plaintiff's allegations and contend that she fabricated the allegations in response to the Delano Police Department initiating an investigation and termination proceedings against Plaintiff because of her alleged misconduct as a police officer. In their Joint Scheduling Report (Doc. 10), Defendants stated the Plaintiff served in the City of Delano's Police Department from 2002 until January 2007, when the Department placed her on leave pending an investigation into the alleged misconduct reported by Plaintiff's officer trainee. (Plaintiff has been on leave since then. (Doc. 10, p. 2).) According to Defendants' Joint Scheduling Report statement, the investigation initially focused on allegations that Plaintiff had mishandled evidence and filed to account for approximately five ounces of marijuana she obtained during a search, and directed a trainee to falsify the police report regarding the marijuana. (*Id.*) However, according to Defendants, "the investigation revealed additional misconduct, such as Plaintiff's failure to secure and book into evidence narcotics (methamphetamine) and drug paraphernalia, Plaintiff's close, personal relationships with known gang members in the community, and misappropriation of her Department issued handcuffs to a

civilian." (Doc. 10, pp. 2-3). The investigation sustained the allegations. (Doc. 10, p. 3). (In their Joint Scheduling Report statement, Defendants do not say whether some or all of these allegations were sustained.) Thereafter, the Department initiated termination proceedings against Plaintiff and referred their investigative findings to the District Attorney who filed charges against Plaintiff for a false report by a police officer and destruction or concealment of evidence. (*Id.*) The matter went to trial and Plaintiff was acquitted of those charges. (Doc. 16, Plaintiff's Reply Brief ("Reply"), p. 2).

In this civil matter, Defendants deny all liability to Plaintiff and contend that all of their actions toward her were taken in good faith, not for any unlawful reasons, and not in violation of any statutes. (Doc. 10, p. 2). Defendants also raised various affirmative defenses in their answers to the complaint, including that, to the extent Plaintiff is able to prove that she perceived statements and/or allegations to be inappropriate, Plaintiff was an active participant in such activity and did not consider it unwelcome. (*Id.*, Doc.7, pp. 7-11, Doc. 9, pp. 8-11).

Discovery has begun in this matter. Some of the requests for admissions served on Plaintiff asked her to admit certain matters relating to her sexual history, specifically, whether she had sex with a named individual while both Plaintiff and this individual were employed by the City of Delano (no other facts) and whether Plaintiff told another named individual that she would have sex with him while both Plaintiff and this individual were City employees (again, no other facts.)[1] Plaintiff is scheduled to be deposed by Defendants on April 6, 2009. Based on these requests for admissions, Plaintiff's counsel concluded that certain aspects of Plaintiff's sexual history might well be the subject of some of the questions posed by Defendants at the deposition. He and Defendants' counsel have conferred on this matter and it does appear that Defendants' counsel wishes to pursue certain questions relating to Plaintiff's sexual history.[2]

---

[1] The declaration of Plaintiff's counsel states that neither of the named individuals is a defendant in this proceeding. (Motion, last attachment, final page.)

[2] The parties filed their Joint Statement Regarding Discovery Dispute on February 28, 2009. (Doc. 17).

# PARTIES' ARGUMENTS

Plaintiff argues that, given the nature of this action, information regarding her sexual history or conduct is not an appropriate subject of discovery under the case law and Rule 412 of the Federal Rules of Evidence. Plaintiff seeks a protective order "prohibit[ing] discovery relating to [the] private consensual sexual conduct and dating relationships of Plaintiff." Defendants oppose any such limitation, maintaining that their inquiries are relevant and discoverable under Rule 26(b) of the Federal Rules of Civil Procedure and decisional law, and that Plaintiff's reliance on Rule 412 of the Federal Rules of Evidence is misplaced inasmuch as that rule governs the admissibility of evidence at trial, not its discoverability.

In their Opposition to Plaintiff's Motion for Protective Order ("Opposition"), Defendants say they "seek to discover information regarding specific romantic relationships Plaintiff had or pursued with Delano Police Officers and others that conflicted with her duties as an Officer." (Opposition, p. 1:26-28). It appears their questions are likely to be focused on what Defendants describe as "the following salient facts" (Opposition, p. 2:17):

1. During the same period Plaintiff alleges that she was sexually harassed, she was having sex with a Delano police officer and had offered to have sex with another.

2. Plaintiff may have had a sexual relationship with a known gang member while a Delano police officer.

3. Plaintiff would often leave her officer trainee at the Police station while she went to visit someone believed to be a romantic interest while she was on-duty.

4. While at a bar with other Delano Police Officers, Plaintiff danced with a known gang member despite her fellow-officers' [sic] suggestion not to do so.

(Opposition, p. 2:18-25.)

Defendants argue that the information they seek is relevant and its scope is narrow, relating only to sexual relationships Plaintiff had or pursued during the period she alleges Mendenhall and DeRosia harassed her. (Opposition, p. 8:13-15). Defendants state they are currently aware of two individuals within the Delano Police Department with whom Plaintiff had or pursued sexual relations, and another individual with whom she engaged in sexual relations who is believed to be

a gang member. (Opposition, p. 8:15-17). If there are others during the relevant time period, Defendants maintain that they are entitled to discover such information, regardless of whether the information itself will be admissible at trial. (Opposition, 8:17-19). Defendants argue that "[n]ot only is such information 'likely to lead to the discovery of admissible evidence' in this case, but it is also likely to be admitted as evidence at trial." (Opposition, 8:19-21).

The relevant legal issues are described, variously, by Defendants – "Plaintiff has put her sexual history while employed at the Delano Police Department by alleging that Mendenhall and DeRosia caused her emotional distress," the logic being that Plaintiff was married at the time and these other sexual relationships could be considered stressors (Opposition, 2:11-12, 26-28); by alleging that the City retaliated against her by initiating termination proceedings; by alleging that Defendant Mendenhall caused Plaintiff emotional distress, in part, by ripping up pictures in her locker, covered a table in Hershey's kisses for her, and arranged a birthday celebration for Plaintiff, acts which Defendants maintain could have been done by someone else romantically involved with Plaintiff at the time[3] (Opposition 2:28, 3:1-5); by Defendants' affirmative defense alleging that if Defendants did behave in such a fashion, the attention was not unwelcome to Plaintiff, claiming that "Plaintiff's discussion with other officers of her sexual relationships and advances toward other officers is relevant ... to whether she believed Mendenhall's alleged conduct was unwelcome" (Opposition, 3:6-8); and for purposes of attacking Plaintiff's credibility.

Defendants explain their credibility argument as: "Federal Rule of Evidence 608 permits Defendants to attack Plaintiff's credibility using specific instances of her conduct. If, at trial, Plaintiff denies that she discussed her sexual relationships with other Delano police officers or that she did not have sexual relations on-duty, Defendants will be permitted to impeach such testimony. As a result, Defendants should not be precluded from having additional information regarding

---

[3] The Court notes that none of Plaintiff's allegations in her complaint appear to assert any such facts. (*See* Doc. 1 *generally*).

5

matters they have reason to believe occurred."[4] (Opposition, 8:3-8). In sum, Defendants claim the information they seek is relevant because it goes to legal issues involving causation of emotional distress, liability (i.e., disciplinary actions were not taken in retaliation but were the result of proper application of municipal policy, *and*, there was no sexual harassment or creation of a hostile working environment because Defendants' attention and conduct toward Plaintiff, if it did occur, was welcome), and impeachment of Plaintiff's credibility at trial.

## DISCUSSION

A. <u>Legal Standards</u>

A district court enjoys broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Pursuant to Federal Rule of Civil Procedure 26(c), upon a showing of good cause, the district court may issue any protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." To obtain a protective order, the moving party bears the burden of showing "good cause" by demonstrating harm or prejudice that will result from the discovery. *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). The moving party must demonstrate a "particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

B. <u>Relevant Federal Rules</u>

Defendants maintain that the information they seek is legally sanctioned by the grant of authority contained in Fed. R. Civ. Proc. 26(b). Plaintiff, on the other hand, argues that a protective order is necessary in this matter to ensure that Plaintiff's legitimate privacy interests are not violated during the fact-finding process. Plaintiff's argument is grounded in the combined application of two federal rules, Fed. R. Civ. Proc. 26(c) and Fed. R. Evid. 412, and the Ninth Circuit decisional law interpreting their application.

---

[4] Defendants maintain that they "are currently aware of two individuals with the Delano Police Department with whom she had or pursued sexual relations ... ." (Opposition, 8:15-16).

6

Fed.R.Civ.Proc. Rule 26 (b) provides that

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. Proc. 26(c)(1) states in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

Fed. R. Civ. Proc. 26(c)(1)(D).

Plaintiff relies on Fed. R. Evid. 412 to inform this "good cause" analysis. That rule concerns the relevancy (and, thus, the admissibility) of an alleged victim's past sexual behavior or alleged sexual predisposition. In portions relevant to the issues before the Court, Fed. R. Evid. 412 provides:

> (a) ... The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> (2) Evidence offered to prove any alleged victim's sexual predisposition.
> (b) Exceptions.
> ...
> (2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.

7

As the briefing in the motion before the Court suggests, the Advisory Comments to Rule 412 are useful here. Pertinent portions include:

> Rule 412 applies to both civil and criminal proceedings. The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.
> ...
> *In order not to undermine the rationale of Rule 412, ... courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26 (c) to protect the victim against unwarranted inquiries and to ensure confidentiality.* **_Courts should presumptively issue protective orders barring discovery_ _unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery._** In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant. (Emphasis added and citations omitted.)

Notes of Advisory Committee on proposed 1994 amendment, Fed. R. Evid. 412.

C. <u>Relevant Decisional Law</u>

Several decisions of the Ninth Circuit are especially persuasive to the Court on the issue before it. The earliest decision was rendered before the 1994 amendment to Rule 412 of the Federal Rules of Evidence but is still quite apposite to the analysis. *Priest v. Rotary*, 98 F.R.D. 755, 1983 U.S. Dist. LEXIS 14448 (N.D. Cal. 1983) involved an action brought pursuant to Title VII of the Civil Rights Act of 1964, alleging that defendant had sexually harassed plaintiff while she was employed by him, creating a hostile and offensive working environment. Defendant denied the allegations, claiming that plaintiff was the sexual aggressor in their relationship and that he had fired her for inappropriate sexual conduct with male patrons while at the workplace. Defendant sought to compel discovery of detailed information about plaintiff's sexual history for a period of time well in excess of that involved in her employment; plaintiff sought a protective order. After ruling that the information defendant sought was thinly disguised character or trait

8

evidence not admissible for the purpose of proving that plaintiff engaged in similar conduct on any particular occasion (Fed. R. Evid. 404(a)), the Court observed that "[e]ven if the information defendant seeks did fall within *Rule 26(b)* the Court must still consider the propriety of a protective order under Rule 26(c)." *Priest*, 98 F.R.D. at \*\*6, \*\*17.

In deciding that discovery-related issue, the Court stated:

> The possibility that discovery tactics such as that used by defendant herein might intimidate, inhibit, or discourage Title VII plaintiffs such as Ms. Priest from pursuing their claims would clearly contravene the remedial effect intended by Congress in enacting Title VII, and should not be tolerated by the federal courts. In fact, it was to empower federal courts to prevent such unjust effects that Rule 26(c) of the Federal Rules of Civil Procedure was enacted. Sexual harassment plaintiffs would appear to require particular protection from this sort of intimidation and discouragement if the statutory cause of action for such claims is to have meaning. Without such protection from the courts, employees whose intimate lives are unjustifiably and offensively intruded upon in the workplace might face the "Catch-22" of invoking their statutory remedy only at the risk of enduring further intrusions into irrelevant details of their personal lives in discovery, and, presumably, in open court. ... [¶] This Court is deeply concerned that civil complaints based on sexual harassment in the workplace will be similarly inhibited, *if discovery tactics such as the one used by defendant herein are allowed to flourish*. [Emphasis added.]

*Id.,* at \*\*18-19, \*\*20-21. The *Priest* court concluded that "in the context of civil suits for sexual harassment, and absent extraordinary circumstances, inquiry into such areas [i.e., complainant's past sexual behavior] should not be permitted, either in discovery or at trial. *Id.* at \*\*22.

A similar issue was posed in *Mitchell v. Hutchings*, 116 F.R.D. 481, 1987 U.S. Dist. LEXIS 6584 (C. Div. Utah 1987). Plaintiffs' complaint alleged a violation of Title VII, claiming that defendant Hutchings sexually harassed them.[5] Much like the situation before this Court, defendants noticed the depositions of several people who allegedly were privy to information about plaintiffs' sexual conduct supposedly relevant to the proceedings. Three of the deponents allegedly had sexual relationships with plaintiffs. Another was a photographer who took sexually suggestive

---

[5] Plaintiffs' complaint also stated a separate tort claim stated for the intentional infliction of emotional distress. The aspects of the court's decision relative to that claim are not discussed here; they are not germane to this case.

9

pictures of plaintiffs, some of which were displayed at Plaintiffs' workplace, the St. George Police Department. One deponent was also a member of the St. George police force and was alleged to have been held down by other police officers while one of the Plaintiffs fondled him.

In *Mitchell*, the defendants argued that the plaintiffs' past sexual history and conduct went to the issue of damages for emotional distress. Defendants also argued that this information was evidence of the sexual atmosphere at plaintiffs' workplace and thus relevant to defendant Hutchings' possible defense that he considered his conduct to be welcomed by Plaintiffs.[6] Plaintiffs argued that defendants' inquiries were calculated to annoy, embarrass and oppress them by inquiring into private sexual matters irrelevant to the action. In deciding these issues, the court reasoned, "In the instant case, the focus of inquiry is on the relevance of the deponents' testimony. If the evidence sought is not relevant, and thus inadmissible, and it does not appear that the evidence sought will lead to evidence that is admissible, then the court can properly limit discovery." *Id.* at **4-5. With respect to the sexual harassment claim, the court stated:

> [E]vidence relating to the work environment where the alleged sexual harassment took place is obviously relevant, if such conduct was known to defendant Hutchings. This evidence can establish the context of the relationship between plaintiffs and Hutchings and may have a bearing on what conduct Hutchings thought was welcome. At the same time, evidence of sexual conduct which is remote in time or place to plaintiffs' working environment is irrelevant. Hutchings cannot possibly use evidence of sexual activity of which he was unaware or which is unrelated to the alleged incidents of sexual harassment as evidence to support his defense. Such evidence is also unlikely to lead to the discovery of admissible evidence. Given the annoying and embarrassing nature of this discovery, the court holds, as a matter of law, that Rule 26 of the Federal Rules of Civil Procedure preponderates against its discoverability.

*Id.* at **6-7.

Regarding the defendants' claim that evidence of such conduct was relevant to the issue of emotional damages because sexually promiscuous people are less likely to be offended by such

---

[6] There were several other reasons advanced by Defendants in support of their position that this information was properly discoverable.

conduct, the court disagreed and said that "[p]ast sexual conduct does not, as defendants would argue, create emotional calluses that lessen the impact of unwelcomed sexual harassment. The fact that the plaintiffs may welcome sexual advances from certain individuals has absolutely no bearing on the emotional trauma they may feel from sexual harassment that is unwelcome. Past sexual conduct does not callous one to subsequent, unwelcomed sexual advancements." *Id.* at \*\*8-9. The court held, as a matter of law, that the defendants' inquiries had to be limited to information which was pertinent to plaintiffs' working environment. Defendants were entitled to depose the co-employee with whom plaintiffs allegedly engaged in sexual conduct at the workplace. However, "Questions relating to sexual activity remote in time or place to the working environment is wholly irrelevant and unlikely to lead to admissible evidence. Such questions would only serve as tools of annoyance and harassment and serve no purpose in this litigation." *Id.* at \*\*10-11.

In *Barta v. City and County of Honolulu*, 169 F.R.D. 132, 1996 U.S. Dist. 19773, (D. Haw. 1996), another sexual harassment and retaliation case, the court similarly refused to allow discovery of plaintiff's past sexual history under the principles set out in Rule 412 of the Federal Rules of Evidence. The *Barta* court stated that it did not find that Rule 26(b)(1) of the Federal Rules of Civil Procedure required that defendants be permitted to inquire into plaintiff's sexual conduct while she was off-duty, outside the workplace, and which did not involve conduct with any of the named defendants. Within that defined area, plaintiff's sexual conduct had no relevance to her claims or applicable defenses, which defenses included the welcomeness or consent to the behavior by plaintiff as well as issues of causation and damages. *Id.* at \*\*8, \*\*10.

*B.K.B. v. Maui Police Department,* 276 F.3d 1091 (9th Cir. 2002) is another useful decision, although its posture is slightly different from this matter. *B.K.B.* turned solidly on the issue of admissibility of evidence, rather than its discoverability. Nevertheless, the reasoning is instructive here. Like most of these cases, plaintiff alleged civil rights violations of sexual harassment and retaliation by the employer. The matter had gone to trial and, during trial, the court allowed testimony of plaintiff's sexual conduct that occurred outside the workplace and involved

1 another employee who worked at the same site as plaintiff. The coworker who was the recipient of
2 this information was the witness who testified to it at trial. None of the named defendants were
3 implicated in the incident about which the coworker testified. Plaintiff's sought a mistrial based on
4 the admission of this evidence, to which she had timely objected. The court concluded the mistrial
5 should have been granted as a result of the improper admission of this evidence, finding that
6 defendants failed to show that whatever probative value the testimony of the coworker may have
7 had was not substantially outweighed by its prejudicial effect. *Id.* at 1106. In reaching this
8 conclusion, the *B.K.B.* court observed that the evidence was offered, in part, to establish that the
9 sexual advances of a named defendant and sexual misconduct at the workplace were not
10 unwelcome. *Id.* at 1105. The court found that because the testimony failed to recount any
11 admissions by the plaintiff regarding the named defendant's advances, the evidence was not
12 probative. Morever, the court noted that plaintiff's alleged statements regarding her sexual habits
13 (made outside the workplace) were not probative as to the welcomeness of any harassing conduct
14 by her coworkers. *Id.*

D. <u>Analysis</u>

Applying the foregoing principles to the facts of this case, the Court concludes that it is appropriate to limit the scope of discovery that Defendants seek to elicit from Plaintiff information about Plaintiff's past sexual conduct or history under Rule 26(c) of the Federal Rules of Civil Procedure. This conclusion is especially appropriate in light of the admonition contained in Fed. R. Evid. 412 that courts should presumptively issue protective orders barring discovery of the victim's past sexual history or predisposition in cases involving sexual offenses unless certain conditions are met, i.e., relevancy and a showing that the information cannot be obtained except through discovery. Those conditions have not been sufficiently demonstrated here – relevancy is questionable, as the discussion below points out, and Defendants have admitted that some of the information Defendants seek to obtain from Plaintiff about her sexual conduct and social relationships have been made available to them through other investigative sources. (E.g., see

Opposition, 6:19-23 and 8:15-17).  A review of the allegations and other information before the Court discloses no sufficient evidence showing that Plaintiff has placed her reputation in controversy in this matter.

Questions posed to Plaintiff regarding her sexual conduct, history, or predisposition are shielded from the reach of Defendants' discovery effort in proceedings of this nature under Fed. R. Evid. 412.  Even though the Rule speaks to issues of admissibility, the Advisory Comments to Rule 412 address the presumptive need to fashion protective orders in the discovery context to ensure that the policy and protections behind Rule 412 are implemented.  That conclusion resonates in *Barta.*  Similar concerns about the chilling effect such discovery might have in cases involving sexual victimization was expressed in *Priest*, the earliest of the decisions discussed above.  *Priest,* 98 F.R.D. at \*\*18-19.  And the *Priest* court was careful to point out that the inquiry as to discoverability did not begin and end with an analysis under Fed. R. Civ. Proc. 26(b), noting that "[e]ven if the information defendant seeks did fall within *Rule 26(b)*, the Court must still consider the propriety of a protective order under *Rule 26(c)*."  *Priest,* 98 F.R.D. at \*\* 17.  *Mitchell* concluded such questioning, at least as it related to the plaintiffs' sexual harassment claims, was out of reach even under Rule 26(b) in that it was neither relevant nor calculated to lead to the discovery of relevant evidence.  *Mitchell,* 116 F.R.D. at \*\*6-7.  Much like the *Priest* decision, the *Mitchell* court observed that even had it been otherwise discoverable under Rule 26(b), consideration of appropriate protective orders would have been part of the court's analysis and evaluation.  *Id.* at \*\* 4-6.  cited and discussed in detail above.  Given the sensitive and potentially embarrassing nature of the information sought from Plaintiff, the fact that she is alleged to be a victim in civil action involving sexual harassment, and the policies voiced in the Advisory Comments to Fed. R. Evid. 412, the Court concludes that the fact that the information sought by Defendants from Plaintiff might be discoverable under Fed. R. Civ. Proc. 26(b) does not limit or absolve the Court of its responsibility to consider and fashion appropriate protective orders under Fed. R. Civ. Proc. 26(c).

The limits of the appropriate reach of discovery involving questions concerning Plaintiff's sexual conduct, history, and predisposition have been established in the Ninth Circuit decisions discussed above. While Defendants claim their inquiries are relevant to claims and defenses in this action, including issues of sexual harassment, consent or welcomeness, retaliation, and emotional damages, such arguments were not deemed persuasive in the decisions discussed earlier. Discovery requests by Defendants seeking to elicit from Plaintiff her sexual conduct, history, intentions and/or desires that occurred while Plaintiff was off-duty, off-site, and that did not involve Mendenhall or DeRosia, the named Defendants in this action, are not proper subjects of that discovery, according to *Barta,* 169 F.R.D. at \*\*8, \*\*10 (plaintiff's sexual conduct while she was off-duty, outside the workplace, and which did not involve conduct with any of the named defendants had no relevance to her claims or applicable defenses, which defenses included the welcomeness or consent to the behavior by plaintiff as well as issues of causation and damages), *Mitchell*, 116 F.R.D. at \*\*6-7 (evidence of sexual conduct which is remote in time or place to plaintiffs' working environment is irrelevant and, given the annoying and embarrassing nature of this discovery, Fed. R. Civ. Proc. 26 preponderates against its discoverability as a matter of law), and *B.K.B*. 276 F.3d at 1106 (evidence of plaintiff's sexual conduct occurring outside the workplace and not involving any named defendants was improperly admitted at trial and not probative on the issue of welcomeness of any harassing conduct by her coworkers).

Defendants cite *Tatum v. Schwartz*, 2007 U.S. Dist. LEXIS 45797 (E.D. Cal. 2007) for the proposition that evidence of plaintiff's extra-marital affairs during the period when the alleged sexual harassment occurred is relevant to other factors in her life that may have contributed to plaintiff's emotional distress. (Opposition, 7:12-20.) Defendants' reliance on *Tatum* is misplaced.

*Tatum* involved an action in which the plaintiff claimed to have become mentally disabled as a result of sexual harassment occurring in her workplace. The harassment allegedly caused plaintiff such severe emotional distress that plaintiff was forced to leave her job as a result of a psychiatric disability. *Tatum*, LEXIS 45797 at \*\*2. As part of her damages claim, plaintiff

14

maintained that she had suffered severe emotional distress, stress, anxiety, post-traumatic stress, insomnia, nightmares, shortness of breath, crying spells, headaches, problems in concentration and memory, anhedonia, shakiness and weight loss. *Id.* at \*\*2-3. Defendants sought to have plaintiff examined under Fed. R. Civ. Proc. 35. *Id.* at \*\*1. Plaintiff was willing to submit to such an examination but objected to its scope based on claims of marital privilege pursuant to Fed. R. Evid. 412 and the marital communications privilege. *Id.* The psychiatric evaluation sought to identify and assess stressors relating to the joint arrest of plaintiff and her husband for public drunkenness and driving under the influence, respectively, plaintiff's husband's other arrests, financial stresses in the marriage, childcare issues, and her husband's ex-wife. *Id.* at \*\*4. The court concluded that plaintiff's expansive claim of protection under that Rule was overbroad and denied her claim, being careful to note that defendants were not seeking information about the sexual nature of plaintiff's relationship with her husband. *Id.* at \*\*5, 6. The factual dissimilarities between the information sought to be discovered in *Tatum* and the facts sought to be discovered here, as well as the differences in the claims for which relief was/is sought and the procedural device at issue in each of these cases are so substantially different that this Court cannot find any useful application of the *Tatum* holding to this case. Doing so would require the Court to turn its back on the long line of decisional authority in the Ninth Circuit that compels a different outcome.

      Defendants' arguments as to the need to explore Plaintiff's past sexual conduct for purposes of impeachment is unpersuasive. First, the Advisory Comments to Fed. R. Evid. 412 specifically state that "Rule 412 seeks to achieve ... its objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence *or for impeachment*, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim." No such showing has been made here by Defendants. Second, to the extent Defendants attempt to use this avenue of questioning to discover evidence for impeachment that they do not currently have, the effort suggests something in the nature of a fishing expedition. Third, some of Defendants'

argument on this point intimates that Defendants do have other sources of information that could be used to explore concerns about Plaintiff's credibility.  Again, as the Advisory Comments to Rule 412 state, information available in ways other than through discovery should not necessarily be the subject of discovery orders." (Emphasis added).  As noted earlier, some of the information sought to be discovered is already in Defendants' possession.

However, not all of the information Defendants seek to discover from Plaintiff is prohibited.  Discovery requests by Defendants seeking to elicit from Plaintiff her sexual conduct occurring while she was off-duty but at the workplace, which were the direct result of Plaintiff's conduct, and about which Mendenhall or DeRosia had knowledge during the period of time before the alleged retaliatory action occurred, are proper subjects of discovery directed to Plaintiff, as are requests seeking to elicit from Plaintiff her sexual conduct, history, intentions and/or desires occurring while Plaintiff was off-duty and that involved Mendenhall or DeRosia directly. *Barta*, 169 F.R.D. at ** 12, fn 7, *B.K.B.*, 276 F.3d at 1105.  Information about Plaintiff's sexual behavior, history, intentions and/or desires that took place while Plaintiff was on-duty, which were the direct result of Plaintiff's conduct, and about which Mendenhall or DeRosia had knowledge during the period of time before the alleged retaliatory action occurred are also proper. *Id., Mitchell*, 116 F.R.D. at **6.

Questions posed to Plaintiff or otherwise sought from Plaintiff regarding information about personal business conducted by Plaintiff *while on-duty* may be also explored by Defendants to a limited degree. *Barta*, 169 F.R.D. at ** 12, ** 15-16.  Defendants may inquire into the identity of the individuals with, the time and place of the contact, and its general purpose.

The *Barta* court noted that its order pertained to discovery of Plaintiff's past sexual behavior or alleged sexual predisposition.  It was not convinced, however, that discovery of plaintiff's "social acquaintances" was included in the scope of its understanding of the term, "sexual behavior or disposition."  Consequently, it did not prohibit the defendants in that case from making inquiries into Plaintiff's social relationships. *Id.* at ** 15.  Accordingly, the Court

16

concludes that questions posed to Plaintiff or otherwise sought from Plaintiff regarding information about Plaintiff's social relationships *while off-duty* are permitted but they are limited strictly to the identity of those individuals and nothing more. *Id.*

## **ORDER**

Based on the foregoing, the Court concludes that good cause exists to grant Plaintiff's Motion for Protective Order in part and to deny that motion in part. Accordingly, the Court makes the following orders:

1. Defendants shall not question or otherwise propound discovery upon Plaintiff, regarding her sexual conduct, history, intentions, and/or desires that occurred while Plaintiff was off-duty, off-site, and that did not involve Mendenhall or DeRosia, the named Defendants in this action.

2. Defendants may question and propound discovery upon Plaintiff, regarding her sexual conduct that occurred while she was off-duty but at the workplace, which were the direct result of Plaintiff's conduct, and about which Mendenhall or DeRosia had knowledge during the period of time before the alleged retaliatory action occurred.

3. Defendants may question and propound discovery upon Plaintiff, regarding her sexual conduct, history, intentions and/or desires that occurred while Plaintiff was off-duty and that involved Mendenhall or DeRosia directly.

4. Defendants may question and propound discovery upon Plaintiff, regarding her sexual behavior, history, intentions and/or desires that took place while Plaintiff was on-duty, which were the direct result of Plaintiff's conduct, and about which Mendenhall or DeRosia had knowledge during the period of time before the alleged retaliatory action occurred.

5. Defendants may question and propound discovery upon Plaintiff, regarding personal business conducted by Plaintiff while on-duty, provided, however, that such discovery is limited to inquiries involving only the identity of the individuals, the time and place of the contact, and its general purpose.

6. Defendants may question and propound discovery upon Plaintiff, regarding Plaintiff's social relationships while off-duty, but such discovery is limited strictly to the identity of those individuals with whom Plaintiff may have had a social relationship, and nothing more.

7. Should Defendants later discover other evidence involving Plaintiff's sexual conduct or past sexual history that is discoverable under the standards set forth here, the Defendants may move this Court for any appropriate modification to this order.

IT IS SO ORDERED.

Dated:  **March 30, 2009**                                    **/s/ Theresa A. Goldner**
                                                                             UNITED STATES MAGISTRATE JUDGE